No. 24-11642-H

# In the United States Court of Appeals
## for the Eleventh Circuit

CASA EXPRESS CORP, as Trustee of Casa Express Trust,

*Plaintiff - Appellant,*

vs.

BOLIVARIAN REPUBLIC OF VENEZUELA, PLANET 2 REACHING, INC., POSH 8, DYNAMIC, INC., RIM GROUP INVESTMENTS CORP., RIM GROUP INVESTMENTS I CORP., et al.,

*Defendants - Appellees.*

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 21-cv-23103-BB

# APPELLEES' BRIEF

Howard Srebnick
Lisandra Guerrero
**BLACK SREBNICK**
201 S. Biscayne Blvd, Suite 1300
Miami, Florida 33131
Tel.: (305) 371-6421

Terrance Reed
**LANKFORD & REED, PLLC**
120 N. St. Asaph St.
Alexandria, VA 22314
Tel.: (703) 299-5000

Robert Dunlap
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1250
Miami, FL 33131
Tel: (786) 924-2900

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

### *Casa Express Corp. vs. Bolivarian Republic of Venezuela, et al.,*
### Case No. 24-11642

Appellees, through undersigned counsel, file this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by Rule 26.1 of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-1.

a)  Black Srebnick

b)  Bloom, Hon. Beth, U.S. District Judge

c)  Bolivarian Republic of Venezuela

d)  Casa Express Corp.

e)  Casa Express Trust

f)  Cedeno, Alejandro Andrade

g)  Collins Apt. 4401, LLC

h)  Dunlap, Robert Tully

i)  Fisher Island 7043, LLC

j)  Freedman Normand Friedland LLP

k)  Fuerst Ittleman David & Joseph

l)  Gamardo, Andres

m)  Gamardo, P.A.

*Casa Express Corp. vs. Bolivarian Republic of Venezuela, et al.,*
**Case No. 24-11642**
**Certificate of Interested Persons (cont'd)**

n)  Gorrin Belisario, Raul

o)  Guerrero, Lisandra

p)  Guillen, Claudia Patricia Diaz

q)  Lankford & Reed, PLLC

r)  Molinaro, Jeffrey J.

s)  Otazo-Reyes, Hon. Alicia, U.S. Magistrate Judge

t)  Patricios, Leon N.

u)  Planet 2 Reaching, Inc.

*v)*  Posh 8, Dynamic, Inc.

w)  Reed, Terrance G.

x)  RIM Group Investments Corp.

y)  RIM Group Investments I Corp.

z)  RIM Group Investments II Corp.

aa)  RIM Group Investments III Corp.

bb)  Srebnick, Howard

cc)  Zumpano Patricios, P.A.

## STATEMENT REGARDING ORAL ARGUMENT

Given the thorough District Court opinions and the Parties' comprehensive briefs, the Respondents submit that oral argument would not materially aid the Court in its decision-making process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................. i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ....................................................................v

STATEMENT OF THE ISSUES ............................................................1

STATEMENT OF THE CASE.................................................................2

    I.    Casa's Judgment Against Venezuela. ...........................................2

    II.    The Commencement of Proceedings Supplementary. ....................3

    III.    Casa's Motion to Commence and Accompanying Exhibits..........................4

    IV.    Allegations in Casa's Motion to Commence and Evidence Presented in Casa's Exhibits. ..........................................................................5

SUMMARY OF THE ARGUMENT .....................................................9

STANDARD OF REVIEW ...................................................................10

ARGUMENT ........................................................................................10

    I.    Casa Lacks Standing to Sue on Venezuela's Behalf. ...................10

    II.    Casa Failed to Allege a Viable Constructive Trust Claim...........................17

        A.    Property subject to a constructive trust must be clearly traceable to the alleged tortious conduct. .......................................................18

        B.    Casa's so-called "circumstantial evidence" does not satisfy its heightened tracing burden.....................................................21

    III.    Casa's Claim is Prohibited by the Act of State Doctrine. ...........................26

A. The District Court correctly applied the act of state doctrine, as Casa's constructive trust claim would require invalidating Venezuela's currency exchange contracts. ..................................................28

B. Casa cannot pivot to a new theory of the case for the first time on appeal, and where Casa failed to raise the argument below. .................31

IV. The Properties are Immune from Attachment and Execution under the FSIA. ....................................................................................................34

A. The District Court applied the correct relevant time period of the alleged commercial activity. ..................................................35

B. The District Court correctly found there was no commercial activity by Venezuela. ..............................................................39

V. Casa Failed to Establish Ancillary Jurisdiction...........................................43

VI. Casa Cannot Maintain *Lis Pendens* over the Properties Without a Viable Constructive Trust Claim or an OFAC License. ..........................................46

VII. The District Court Lacked Personal Jurisdiction Over Gorrin. ..................49

A. Casa failed to establish that Gorrin was conducting business under the prevailing Eleventh Circuit factors........................................50

B. Casa failed to demonstrate a connection between the alleged tortious conduct—bribe payments made to accounts in South Florida—and the constructive relief sought concerning unrelated Properties..................52

C. Casa similarly cannot show that the assertion of personal jurisdiction over Gorrin comports with due process concerns.................................53

VIII. The District Court Properly Exercised its Discretion in Denying Casa's Motion for Email Service on Gorrin After Affirming the Magistrate's Finding No Personal Jurisdiction. ..................................................................54

CONCLUSION ...................................................................................55

CERTIFICATE OF COMPLIANCE .......................................................56

CERTIFICATE OF SERVICE ................................................................57

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aaron v. Allstate Ins. Co.*,
  559 So.2d 275 (Fla. 4th DCA 1990) ....................................................16

*Access Now, Inc. v. Sw. Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004) .........................................................32

*Alhassid v. Bank of America, N.A.*,
  60 F.Supp.3d 1302 ..........................................................................28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................. 19, 22

*Bainbridge Fund, Ltd. v. Republic of Argentina*,
  102 F.4th 464 (D.C. Cir. 2024) ..........................................................38

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) ........................................................................27

*Bartlett v. Baasiri*,
  81 F.4th 28 (2d Cir. 2023) ................................................................39

*Beefy King Int'l, Inc. v. Veigle*,
  464 F.2d 1102 (5th Cir. 1972) ...........................................................49

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................. 19, 22

*Bender v. CenTrust Mortg. Corp.*,
  51 F.3d 1027 (11th Cir. 1995) .............................................. 19, 23, 24

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*,
  2022 WL 71662 (W.D.N.Y. Jan. 7, 2022)............................................31

*California v. Rooney*,
  483 U.S. 307 (1987) ........................................................................36

*Clinic Mgmt. LLC v. Berry*,
   912 F.3d 1330 (11th Cir. 2019) ..............................................................23

*Conn. Bank of Com. v. Republic of Congo*,
   309 F.3d 240 (5th Cir. 2002) .................................................... 16, 41, 42

*Craft v. Craft*,
   757 So.2d 571 (Fla. 4th DCA 2000) ............................................. 12, 15

*D-I Davit Int'l-Hische GMBH v. Carpio*,
   346 So. 3d 197 (Fla. 3d DCA 2022) .....................................................50

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) .............................................................................39

*Donan v. Dolce Vita Sa, Inc.*,
   992 So.2d 859 (Fla. 4th DCA 2008) ............................................. 12, 13

*Drummond v. Alsaloussi*,
   2023 WL 3970958 (S.D. Fla. June 13, 2023) .......................................47

*ECB, USA, Inc. v. Chubb Ins. Co. of New Jersey*,
   587 F.Supp.3d 1205 (S.D. Fla. 2021) ..................................................16

*Feldman v. Am. Dawn, Inc.*,
   849 F.3d 1333 (11th Cir. 2017) ...........................................................18

*FOGADE v. ENB Revocable Trust*,
   263 F.3d 1274 (11th Cir. 2001) ...........................................................27

*Forgione v. Dennis Pirtle Agency, Inc.*,
   701 So.2d 557 (Fla. 1997) ...................................................................15

*FTC v. AbbVie Products LLC*,
   713 F.3d 54 (11th Cir. 2013) ...............................................................32

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
   218 F.3d 1247 (11th Cir. 2000) .................................................... 51, 53

*Glen v. Club Mediterranee S.A.*,
   365 F. Supp. 2d 1263 (S.D. Fla. 2005) ........................................ 27, 28

vi

*Goya Foods, Inc. v. Unanue*,
  233 F. 3d 38 (1st Cir. 2000) .................................................................20

*Heath v. Jones*,
  863 F.2d 815 (11th Cir. 1989) ...............................................................32

*Hillsborough Cnty. v. Dickenson*,
  169 So. 734 (Fla. 1935) .........................................................................14

*Honeycutt v. United States*,
  581 U.S. 443 (2017)............................................................................8, 25

*Horizon Aggressive Growth, L.P. v. Rothestein-Krass, P.A.*,
  421 F.3d 1162 (11th Cir. 2005) .............................................................52

*In re Fin. Federated Title*,
  347 F.3d.............................................................................................4, 18

*In re Schick*,
  246 B.R. 41 (Bankr. S.D.N.Y. 2000) ....................................................14

*Jameson v. Jameson*,
  163 So. 468 (Fla. 1935) .........................................................................46

*Labbee v. Harrington*,
  913 So.2d 679 (Fla. 3d DCA 2003) ........................................ 50, 51, 52

*Licea v. Curacao Drydock Co.*,
  794 F. Supp. 2d 1299 (S.D. Fla. 2011) ..................................................42

*Luis v. United States*,
  578 U.S. 5 (2016)......................................................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................36

*Macort v. Prem, Inc.*,
  208 F.App'x 781 (11th Cir. 2006).................................................. 32, 37

*Maio v. Clarke*,
  255 So.3d 369 (Fla. 4th DCA 2018) ......................................................14

*Marcucchi v. Hardy*,
  65 F.3d 986 (1st Cir. 1995) ...................................................................20

*Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*,
  14 F.3d 1507 (11th Cir. 1994) .................................................................9

*Muhammad v. Citimortgage, Inc.*,
  598 F.App'x  (11th Cir. 2015) ...............................................................32

*Myd Marine Distrib., Inc. v. Int'l Paint Ltd.*,
  201 So.3d 843 (Fla. 4th DCA 2016) ......................................................13

*Nat'l Mar. Servs., Inc. v. Straub*,
  776 F.3d 783 (11th Cir. 2015) ...............................................................43

*Peacock v. Thomas*,
  516 U.S. 349 (1996).................................................................... 43, 45, 46

*Phillips v. Smith*,
  429 F.App'x 905 (11th Cir. 2011).........................................................52

*Plair v. Interactive Commc'ns Int'l, Inc.*,
  No. 23-10731, 2024 WL 1480406 (11th Cir. Apr. 5, 2024)..................48

*Puzzo v. Ray*,
  386 So.2d 49 (Fla. 4th DCA 1980) ........................................ 12, 13, 14, 15

*Republic of Haiti v. Crown Charters, Inc.*,
  667 F.Supp. 839 (S.D. Fla. 1987) .....................................................4, 23

*Restless Media GmbH v. Johnson*,
  No. 22-cv-80120, 2023 WL 2836971 (S.D. Fla. Feb. 1, 2023)...........16

*Ricaud v. Am. Metal Co.*,
  246 U.S. 304 (1918)...............................................................................27

*Richison v. Ernest Group, Inc.*,
  634 F.3d 1123 (10th Cir. 2011) ............................................................11

*Royal Wulff Ventures LLC v. Premiero Mining Corp.*,
  938 F.3d 1085 (9th Cir. 2019)...............................................................31

*Rubin v. Islamic Republic of Iran,*
   830 F.3d 470 (7th Cir. 2016)....................................................40

*Sapuppo v. Allstate Floridian Ins. Co.,*
   739 F.3d 678 (11th Cir. 2014).............................................10, 11

*SE Property Holdings, Inc. LLC v. Welch,*
   65 F.4th 1335 (11th Cir. 2023).................................................44

*Sexual Minorities Uganda v. Lively,*
   899 F.3d 24 (1st Cir. 2018) .....................................................36

*Sinaltrainal v. Coca-Cola Co.,*
   578 F.3d 1252 (11th Cir. 2009).................................................18

*Smith v. Marcus & Millichap, Inc.,*
   106 F.4th 1091 (11th Cir. 2024)..........................................11, 48

*State Road Dep't v. Bender,*
   2 So.2d 298 (Fla. 1941) ..........................................................16

*Team Servs. Inc. v. Securitas Electronic Sec., Inc.,*
   2023 WL 6890660 (11th Cir. 2023).........................................28

*TIG Ins. Co. v. Republic of Argentina,*
   967 F.3d 778 (D.C. Cir. 2020) ..................................... 35, 37, 38

*U.S. v. Benitez,*
   779 F.2d 135 (2nd Cir. 1985)....................................................21

*U.S. v. One Parcel of Real Estate at 3229 S.W. 23rd Street, Miami Fla.,*
   768 F. Supp. 340 (S.D. Fla. Jun. 26, 1991)........................... 20, 21

*United States v. Gillis,*
   938 F.3d 1181 (11th Cir. 2019) ...............................................36

*United States v. M/Y Galactica Star,*
   13 F.4th 448 (5th Cir. 2021).....................................................40

*Virgilio v. Ryland Group, Inc.,*
   680 F.3d 1329 (11th Cir. 2012)................................................29

*W.S. Kirkpatrick & Co., Inc. v. Envt'l Tectonics Corp. Int'l*,
  493 U.S. 400 (1990) .................................................................... 27, 30, 31

*Waldman v. Conway*,
  871 F.3d 1283 (11th Cir. 2017) ............................................................23

*Walsh v. Abate*,
  336 So. 3d 50 (Fla. 4th DCA 2022) .......................................................46

*Washington v. Fireman's Fund Ins. Co.*,
  459 So.2d 1148 (Fla. 4th DCA 1984) ....................................................15


**Statutes**

19 U.S.C. § 1621 ...................................................................................26

28 U.S.C. § 1605 ...................................................................................42

28 U.S.C. § 1610 ...............................................................................1, 42

28 U.S.C. § 1610(c) ............................................................................2, 3

28 U.S.C. 1610(a) .................................................................................42

Article III of the United States Constitution ......................................10, 11

Fl. Stat. § 726.105(1) ............................................................................44

Fla. Stat. § 48.23 ..................................................................................48

Fla. Stat. § 56.29 ...............................................................................3, 12

Fla. Stat. § 56.29(6)(a) ..........................................................................12

Fla. Stat. §§ 49.193(1)(a)(1), (1)(a)(2) ..................................................49

Fla. Stat. 48.193(a)(2) ...........................................................................52

Fla. Stat. 48.23(2) ............................................................................46, 47

section 56.29(5) .....................................................................................13

Title 21, United States Code, Section 853(p) ......................................8, 25

x

**Rules**

Eleventh Circuit Rule 3-1 .......................................................................11, 32, 37, 48

Eleventh Circuit Rule 26.1-1 .....................................................................................1

Fed. R. App. P. 27(d)(2)(A)......................................................................................56

Fed. R. App. P. 32(a)(5) and (6)................................................................................56

Fed. R. App. P. 32(f).................................................................................................56

Rule 26.1 of the Federal Rules of Appellate Procedure............................................1

**Regulations**

31 C.F.R. §§ 591.202(a), (e) ............................................................................. 47, 48

## STATEMENT OF THE ISSUES

1. Whether a private judgment creditor, seeking to collect an unrelated debt, can use Florida's proceedings supplementary statute to expropriate and commandeer a foreign sovereign's potential "chose in action"—*i.e.*, a foreign sovereign's right to litigate (or not litigate) the validity of the acts of its own national treasurers.

2. Whether Casa failed to sufficiently allege the fundamental tracing requirement for a viable constructive trust claim by failing to link the Properties[1] sought to be subjected to a constructive trust to the alleged tortious conduct.

3. Whether Casa's constructive trust claim required invalidating Venezuelan government currency exchange contracts, thereby implicating the act of state doctrine, which bars judicial inquiry into the validity of a sovereign nation's actions.

4. Whether the Properties were immune from attachment and execution because Venezuela did not use them for commercial activity within the meaning of the FSIA, 28 U.S.C. § 1610.

5. Whether the *lis pendens* imposed upon the  Properties properly lapsed where Casa's cause of action was due to be dismissed on five different grounds, Casa

---

[1] The "Properties" refers to those listed at IB:20(n.3).

had failed to demonstrate a connexity between its constructive trust claim and the Properties, and the *lis pendens* violated OFAC regulations.

6. Whether Casa failed to establish personal jurisdiction over Gorrin under Florida's long arm statute given the lack of connection between the alleged Florida acts and the cause of action and the insufficiency of allegations that Gorrin was conducting business in the state.

7. Whether Casa's request to serve Gorrin via email was properly denied where Casa steadfastly refused to attempt to effectuate proper service and failed to establish personal jurisdiction over Gorrin.

## STATEMENT OF THE CASE

### I.    Casa's Judgment Against Venezuela.

On December 18, 2018, Casa filed a breach of contract action against Venezuela in the Southern District of New York. *Casa Express Corp., as Trustee of Casa Express Trust v. Bolivarian Republic of Venezuela*, Case No. 18-cv-11940-AT (S.D.N.Y. Dec. 18, 2018). According to Casa's complaint, Venezuela had failed to make contractually mandated payments on commercial bonds issued in 1998 and 2002. SDNY-ECF#1:1-2. Casa ultimately obtained an Amended Final Judgment against Venezuela. SDNY-ECF#83; ECF#1-1.[2] On June 4, 2021, Casa moved "pursuant to 28 U.S.C. § 1610(c)" "to enforce against *Venezuela's assets* to aid in

---

[2] Record citations are formatted: ECF#___:Page(Paragraph).

the execution." SDNY-ECF#90:1. Casa's motion was granted on July 16, 2021. SDNY-ECF#96.

## II.    The Commencement of Proceedings Supplementary.

On August 27, 2021, Casa commenced the underlying action by registering, in the Southern District of Florida, its Amended Final Judgment against Venezuela. ECF#1. On September 2, 2022, Casa filed an Amended *Ex Parte* Expedited Motion to Commence Proceedings Supplementary, to Implead Defendants, and for Issuance of Statutory Notices to Appear. ECF#60 ("Motion to Commence"). Casa sought the "commencement of proceedings supplementary to execute the Amended Final Judgment" against Venezuela and an order impleading the Respondents[3] (ECF#60:1), claiming the Properties were "subject to a constructive trust in favor of Venezuela" and "to execution by [Casa] pursuant to" the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610(c), and Florida's Proceedings Supplementary Statute, Fla. Stat. § 56.29 (ECF#60:2).

Statutory Notices to Appear were issued to the Respondent Entities[4] on September 7, 2022 (ECF#63-71). and an Amended Statutory Notice to Appear was issued to Gorrin on September 8, 2022 (ECF#76).

---

[3] "Respondents" refers to Raul Gorrin Belisario ("Gorrin") and the Respondent Entities.

[4] "Respondent Entities" refers to those listed at IB:20(n.2).

### III. Casa's Motion to Commence and Accompanying Exhibits.

The sole legal theory advanced by Casa in its Motion to Commence was one of constructive trust—that is, a constructive trust should be imposed upon the Respondents' Properties in Venezuela's favor and then be used to satisfy Casa's judgment against Venezuela.

Casa conceded that "[u]nder Florida law, the well-recognized constructive trust doctrine allows the rightful owner of misappropriated funds to trace 'the proceeds of such property and to whatever has been bought with the proceeds if it is capable of being substantially identified as having been acquired with the misappropriated property or funds.'" ECF#60:13 (quoting *Republic of Haiti v. Crown Charters, Inc.*, 667 F.Supp. 839, 843 (S.D. Fla. 1987)). And Casa requested that the District Court "impose a constructive trust in favor of Venezuela over the real properties *as long as* they are 'directly or indirectly' traceable to the misappropriated funds." ECF#60:16 (citing *In re Fin. Federated Title*, 347 F.3d 880, 891 (11th Cir. 2003)) (emphasis added).

Relying on the Declaration of its expert Nelson Luis (the "Luis Declaration") (ECF#60-14) and the following exhibits, Casa concluded that the Respondents' Properties "were acquired using misappropriated Venezuelan funds" and "the misappropriated funds are traceable to the real properties," thus rendering them "subject to a constructive trust in favor of Venezuela" (ECF#60:24-25):

4

- A factual proffer signed by Andrade as part of a plea agreement in the case of *United States v. Andrade*, Case No. 17-cr-80242 in the Southern District of Florida (the "Andrade Proffer") (ECF#60-6);

- A factual proffer signed by Jimenez as part of a plea agreement in the case of *United States v. Jimenez*, Case No. 18-cr-80054 in the Southern District of Florida (the "Jimenez Proffer") (ECF#60-9);

- Press releases issued by the U.S. Department of Justice on November 20, 2018 (ECF#60-7), November 27, 2018 (ECF#60-8), November 29, 2018 (ECF#60-10), and December 16, 2020 (ECF#60-11) (the "DOJ Press Releases");

- A press release issued by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") on January 8, 2019 (the "OFAC Press Release") (ECF#60-5) and an accompanying chart (the "OFAC Chart") (ECF#60-13); and

- The Superseding Indictment against Gorrin and Diaz in the case of *United States v. Gorrin*, *et.al.*, Case No. 18-cr-80160 in the Southern District of Florida (the "Gorrin Indictment") (ECF#60-12).

## IV.    Allegations in Casa's Motion to Commence and Evidence Presented in Casa's Exhibits.

Underlying Casa's constructive trust theory is what Casa calls a "currency exchange scheme." According to Casa's Motion to Commence and attached exhibits, the Oficina Nacional del Tesoro ("ONT"), or Venezuelan National

Treasury, would sometimes sell dollar-denominated bonds to meet its obligations. ECF#60:5(¶8); ECF#60-6:3; ECF#60-5:3. "The Venezuelan National Treasurer would then decide whether the proceeds generated from the bond sales would be exchanged to bolivars at the Venezuelan National Bank or at 'casas de bolsa' [exchange houses] at the preferential government rate." ECF#60:5(¶9); ECF#60-6:3.

The exchange houses could offer the ONT a *more* favorable exchange rate than the government rate offered by the Venezuelan National Bank because the exchange houses had access to, and profited from, arbitrage trading in a parallel exchange market. ECF#60:5(¶10); ECF#60-6:3; ECF#60-5:3. However, only ONT-approved exchange houses could conduct currency exchanges with the ONT (ECF#60:5(¶11)), and the Venezuelan Treasurer decided which brokerage houses received government business (ECF#60-5:3). Thus, Casa alleged that "Gorrin controlled one of the few [exchange houses], which were ONT-approved, (ECF#60:6(¶12), and he paid bribes to two Venezuelan Treasurers—Andrade and Diaz—to "secure the rights to illegally conduct foreign currency exchange transactions for the Venezuelan government." ECF#60:5(¶13). These transactions took place "at favorable rates for the Venezuelan government"—*i.e.*, better rates than those offered by the Venezuelan National Bank. ECF#60-7:2; ECF#60-8:2; ECF#60-11:2.

Casa alleged that Gorrin's unidentified exchange house separately earned profits through unrelated currency exchanges on a parallel private market. ECF#60:5(¶10); ECF#60:17; ECF#60-5:3 ("These exchange houses kept the difference between the black market rate and the official government rate, resulting in massive profits for exchange houses providing bolivars to the ONT."). Casa's Motion to Commence, in a conclusory fashion, refers to Gorrin's profits derived from the parallel market transactions as "misappropriated Venezuelan funds." ECF#60:8.

Casa's Motion to Commence then embarks on an attempt to "trace" these so-called "misappropriated Venezuelan funds" to the Respondents' Properties. Casa relied on the Jimenez Proffer to allege that Gorrin and Jimenez acquired a bank in the Dominican Republic to "launder the misappropriated Venezuelan funds and to facilitate bribe payments." ECF#60:6(¶17) (citing ECF#60-9). Casa also relied on the OFAC Press Release and OFAC Chart, which blocked the Respondents and Properties, claiming that "OFAC made the factual finding that Gorrin invested the misappropriated Venezuelan funds in '*domestic and international property*' through a network of corporate entities and structures in order to obfuscate the beneficial ownership of the assets." ECF#60:8(¶26) (emphasis added). The OFAC Press Release states that the "corrupt proceeds generated through this scheme were invested in *domestic and international property, aircraft, yachts, horses, and other*

*luxury goods*." ECF#60-5:6 (emphasis added). The OFAC Chart likewise states that "Gorrin, Gonzalez, and Perdomo invested corrupt wealth *in U.S. and abroad*, *in properties and assets*," and includes symbols of a building, horse, airplane, yacht, and jewelry. ECF#60-13 (emphasis added). Neither the Jimenez Proffer, OFAC Press Release, or OFAC Chart mention the Respondents' Properties.

Casa next pointed to the designation of the Respondent Entities in the OFAC Press Release. ECF#60:8(¶27); ECF#60-5:6 ("The following companies were designated or blocked today for being owned or controlled by the aforementioned individuals[.]"). Further, Casa pointed to property records gathered by its expert reflecting that the Respondent Entities purchased the Properties in Florida since 2008." ECF#60:9(¶28). Finally, Casa and its expert, attempted to close the loop by relying on the Superseding Indictment against Gorrin, which classifies the Properties as "substitute property under the provisions of Title 21, United States Code, Section 853(p)," (ECF#60-12:19), rendering them "*other property of the defendants*" untainted by the offense and *not traceable to* the offense. *Honeycutt v. United States*, 581 U.S. 443, 452 (2017). Casa and its "expert" failed to appreciate the significance of the Properties' classification as "substitute property," erroneously interpreting that to mean that the Properties were "derived from proceeds traceable to [the] offense." ECF#60:10(¶31); ECF#60:24; ECF#60-14:11(¶25). In fact, it is exactly

the opposite: substitute property is ***property that is not traceable to the offense***. *See generally Luis v. United States,* 578 U.S. 5 (2016).

## SUMMARY OF THE ARGUMENT

"When stripped of the rhetoric of misappropriated assets and constructive trusts, [Casa's] complaint essentially seeks the payment of a debt[.]" *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1520 (11th Cir. 1994). The debt in question arises from unpaid Venezuelan bonds entirely unrelated to the Respondents or their Properties. Unable to collect directly from Venezuela, Casa purports to "step into [its] shoes" to impose a constructive trust on Venezuela's behalf over the Respondents' Properties, alleging they were acquired with "misappropriated Venezuelan funds" from a so-called "currency exchange scheme" involving Venezuela's national treasurers.

Casa's constructive trust claim fails every step of the way. *First*, Casa lacks standing to usurp Venezuela and seize a potential, unasserted cause of action on its behalf. *Second*, even if Casa had standing, Casa failed to sufficiently allege the fundamental element of a viable constructive trust because the Respondents' Properties are not traceable to the conduct underlying the "currency exchange scheme," which also deprived the District Court of personal jurisdiction over Gorrin. *Third*, even if Casa had met its pleading burden, its constructive trust claim would be barred by the Act of State Doctrine because the Court would be required to decide

the validity of currency exchange contracts undertaken by Venezuelan governmental officials in Venezuela. *Fourth*, the Respondents' Properties do not belong to Venezuela, and they would be immune from attachment and execution under the FSIA even if they did because they have not been used for commercial activity in the United States by Venezuela. *Finally*, there is no ancillary jurisdiction because Casa seeks to impose liability on the Respondents, who are not otherwise liable for Venezuela's judgment based on a completely unrelated bond dispute. Therefore, the dismissal of Casa's action should be upheld.

## STANDARD OF REVIEW

"To obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

## ARGUMENT

### I. Casa Lacks Standing to Sue on Venezuela's Behalf.

Casa does not dispute or challenge the District Court's holding that Casa failed to plead or establish constitutional or prudential standing under Article III of the United States Constitution, or a valid assignment by Venezuela of its litigation rights. ECF#289:24 ("Article III standing is absent"); ECF#289:29 ("Casa failed to establish it has been assigned litigation rights by Venezuela."). Therefore, Casa "is

deemed to have abandoned any challenge of that ground." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).[5] And Casa's passing reference to the District Court's rulings in its "Statement of the Facts," (IB:36), does not constitute a proper challenge sufficient to overcome abandonment. *Id.* at 681 ("passing references . . . in the 'statement of the case' or 'summary of the argument'" may constitute abandonment).

The sole issue raised by Casa's appeal concerning standing is "[w]hether Florida law prohibits a judgment creditor from standing in the shoes of a judgment debtor to prosecute claims of the judgment debtor against third parties solely on the grounds that the judgment debtor is a foreign sovereign." IB:5. Casa claims that, under Florida's proceedings supplementary statute, it can seize and prosecute Venezuela's unasserted sovereign "chose in action" against the Respondents and impose a constructive trust on the Respondents' Properties in satisfaction of

---

[5] Indeed, Casa had previously "failed to object to the portion of the R&R indicating that it lacks Article III or prudential standing," (ECF#283:24), which "waives the right to challenge on appeal the district court's order." 11th Cir. R. 3-1. And while this Court "*may*, but [is] not bound to, review for plain error if the plain interests of justice exception applies," *Plair v. Interactive Commc'ns Int'l, Inc.*, 024 WL 1480406, at *3 (11th Cir. Apr. 5, 2024), "the failure to argue plain error and its application on appeal surely marks the end of the road for an argument for reversal not first presented to the district court," *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011). *See Smith v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1099 (11th Cir. 2024) ("That 'rare exception doesn't apply here because [the Residents] didn't argue in [their] initial brief that reviewing [their] waived objections was necessary and in the interests of justice.'"). Casa's opening brief does not claim any plain error by the District Court as to any matter.

Venezuela's judgment debt. IB:76 ("Casa is asserting a chose in action to secure a constructive trust for Venezuela."). But Casa cannot manufacture standing by appropriating Venezuela's potential claims in proceedings supplementary.

Proceedings supplementary to execution are governed by Section 56.29, Florida Statutes, which provides that "[t]he court *may* order any *property* of the judgment debtor *not exempt from execution* … to be levied upon and applied toward the satisfaction of the judgment debt." Fla. Stat. § 56.29(6)(a) (emphasis added). While "choses in action" may be considered "property" under the statute, *Puzzo v. Ray*, 386 So.2d 49, 49 (Fla. 4th DCA 1980),[6] it is undisputed that some choses in action "have been held not to be assignable, or in other words, not reachable in proceedings supplementary" *Craft v. Craft*, 757 So.2d 571, 572 (Fla. 4th DCA 2000); IB:64. A judgment creditor is precluded from seizing a debtor's chose in action involving a "personal tort," *Craft*, 757 So.2d at 572, or where it would be "inequitable and contrary to public policy" *Donan v. Dolce Vita Sa, Inc.*, 992 So.2d 859, 861 (Fla. 4th DCA 2008).[7] Both exceptions apply here.

---

[6] *Puzzo* is distinguishable because it involved a clear-cut case in which the judgment debtor's property had indisputably been taken by a third party, and the judgment creditor sought to seize the debtor's conversion claim in proceedings supplementary to recover the property and satisfy the judgment. *Puzzo*, 386 So.2d at 49.

[7] In *Donan*, the court held that it would be inequitable and against public policy to let a litigant control both sides of a lawsuit, confirming that a trial court has discretion to make such a determination.

Not surprisingly, Casa cites no case where a judgment creditor seized a sovereign nation's chose in action and then sued on its behalf, let alone one where the creditor purports to claim that the nation's top officials committed fraud and absconded with illicit gains. It is well within the District Court's discretion to consider the "sensitive nature of a sovereign," (ECF#283:25), and the "sensitive sovereign issues involved," *Id*. at 27, in holding that it would be against public policy to do so. *See Donan*, 992 So.2d at 861 ([T]he trial court had the discretion to make this exception to the statute … In addition, section 56.29(5) … says that the judge 'may,' not shall, order execution."); *Myd Marine Distrib., Inc. v. Int'l Paint Ltd.*, 201 So.3d 843, 846 (Fla. 4th DCA 2016) ("[S]tatutory supplementary proceedings are equitable in nature such that a court has discretion over whether or not to grant them.").

Moreover, the chose in action Casa purports to assert is not assignable in supplementary proceedings.

*First*, a constructive trust claim is not "a suit at law," such that it is not a chose in action within the meaning of Florida's proceedings supplementary statute. *Myd Marine Distrib., Inc.*, 201 So.3d at 845 ("A 'chose in action' is a 'personal right not reduced into possession, but recoverable by a *suit at law* … A right to recover a debt, demand, or damages on a cause of action ex contractu or for a tort or omission of a duty.'") (emphasis added); *Puzzo*, 386 So.2d at 50 (same). Casa admits that "[a]

13

constructive trust is an *equitable* remedy available in a situation where there is a wrongful taking of the property of another." ECF#60:14; *In re Schick*, 246 B.R. 41, 46 (Bankr. S.D.N.Y. 2000) ("The personal nature of the equitable right prevents someone other than the beneficiary from using it offensively or defensively. Thus, a stranger cannot sue to impose a constructive trust for the benefit of a defrauded party."); *Maio v. Clarke*, 255 So.3d 369, 371 (Fla. 4th DCA 2018) ("A constructive trust is one raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it."). And Casa has unequivocally represented that it does not seek an award of damages. ECF#60:30 (seeking a determination "that the real properties are subject to a constructive trust in favor of Venezuela."); ECF#229:3 ("As sole remedy, Plaintiff seeks the imposition of a constructive trust over the Properties."); ECF#229:6 ("Plaintiff does not seek money damages in this proceeding. The sole remedy sought in this proceeding is the imposition of a constructive trust[.]").

Casa inaccurately bases its position on *Hillsborough Cnty. v. Dickenson*, 169 So. 734 (Fla. 1935). That case involved a suit by county commissioners to recover excess fees collected and not reported by a former county clerk, who subsequently transferred the funds to his daughter. *Id*. at 184-85. The court merely held that "a judgment creditor … may pursue in a court of equity any equitable interest, trust, or

demand of his debtor, in whosoever hands it may be found." *Id*. at 186. The court did not hold that a stranger to the underlying tort can appropriate the chose in action.

*Second*, the allegations underlying Casa's purported constructive trust claim concern services of a "personal nature … involving highly confidential relationships," *Craft*, 757 So.2d at 572; *see Washington v. Fireman's Fund Ins. Co.*, 459 So.2d 1148 (Fla. 4th DCA 1984) (legal malpractice action is not assignable); *Forgione v. Dennis Pirtle Agency, Inc.*, 701 So.2d 557, 560 (Fla. 1997) (the attorney-client relationship "is a fiduciary relation of the very highest character, and the attorney owes a duty of undivided loyalty to the client," and it "is also a personal one" because "[a]n attorney may not substitute another attorney in his or her place without the client's consent."). According to Casa:

> Under Venezuelan law, Andrade and Diaz [the Venezuelan National Treasurers] owed fiduciary obligations to Venezuela as treasurer and in overseeing ONT [the Venezuelan National Treasury]. In reliance upon their fiduciary responsibilities, Venezuela entrusted each with access to sovereign funds in ONT accounts. In breach of these duties, each accepted bribes from Gorrin. Andrade's and Diaz's fiduciary breaches directly and proximately damages Venezuela.

IB:25 (internal citations omitted).

Casa cannot seriously dispute that the relationship between a sovereign nation and its national treasurer is of a personal and highly confidential nature, or that its allegations go to the heart of this relationship. Yet Casa emphasizes the financial aspect of the case, reframing it as "a right of action for injury to property interests"

and claiming that "[t]here is nothing uniquely sensitive about misappropriation from the government that would prevent a chose in action." IB:65. This perspective strains credulity as it ignores the real foundation of the claim, involving the nature of the relationship, and associated fiduciary duties, between a nation and its treasurer.[8] This important distinction was aptly recognized by the District Court.

*Finally*, even if Venezuela's chose in action were of the type potentially assignable in proceedings supplementary, it would be property "exempt from execution" under the FSIA. S*ee Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002) (the purported contractual waiver of sovereign immunity does not expand the property subject to attachment beyond: (i) property in the United States; (ii) used for commercial purposes). An unfiled lawsuit that a foreign sovereign could (supposedly) bring at some point in the future is at best for Casa a future "property" right that is not yet in existence, let alone being used for a commercial purpose in the United States. Casa cannot execute upon Venezuela's right to bring a lawsuit (*i.e.*, a purported "chose in action," which is "property")

---

[8] The cases Casa cites are entirely distinguishable. *Restless Media GmbH v. Johnson*, No. 22-cv-80120, 2023 WL 2836971 (S.D. Fla. Feb. 1, 2023) (a dispute over the sale of two vintage cars); *State Road Dep't v. Bender*, 2 So.2d 298, 300 (Fla. 1941) (the appropriation of a strip of land in a housing subdivision); *ECB, USA, Inc. v. Chubb Ins. Co. of New Jersey*, 587 F.Supp.3d 1205, 1211 (S.D. Fla. 2021) (action by insureds against liability insurer regarding coverage); *Aaron v. Allstate Ins. Co.*, 559 So.2d 275, 277 (Fla. 4th DCA 1990) (action against insurer for failing to settle a claim within policy limits)

because any such taking would be in derogation of the FSIA. Therefore, the District Court correctly held that "Casa failed to establish standing." ECF#283:23.

## II.     Casa Failed to Allege a Viable Constructive Trust Claim.

Casa contends that it adequately alleged a constructive trust by presenting "circumstantial evidence" from which it can be "inferred" that so-called misappropriated funds were "directly or indirectly" used to acquire the Respondents' Properties. IB:44 (instead of tracing, referencing "circumstantial evidence" resulting in "infer[ences] that the funds were used to obtain the Properties."); IB:46 (alluding generally to "question of material fact remain[ing]" as to whether "misappropriated funds" are traceable to Properties "directly or indirectly").

Casa is incorrect. Casa conceded that the classification of the Properties as "substitute property" is accurate, meaning the Properties cannot be traced to the alleged offense. Casa's so-called "circumstantial" evidence—at most—raised the mere conclusory *possibility* of an indirect link between the funds and the Properties. But the fact that money was invested in "domestic and international property" means no more than that the money was invested in property somewhere on the planet Earth—that does not constitute "tracing." Nor does it provide any actual factual basis to show that such a link to these specific Properties actually exists. Put simply, Casa's tracing allegations are untethered to any specific supporting facts at all, let alone facts sufficient to amount to "tracing." Thus, the District Court correctly held

17

that "Casa fails to sufficiently allege a link between the Funds and the Properties to establish a constructive trust over the Properties." ECF#283:23.

## A. Property subject to a constructive trust must be clearly traceable to the alleged tortious conduct.

As an initial matter, Casa misinterprets the District Court's ruling as requiring "direct evidence of connexity." IB:52. However, the District Court repeatedly and correctly determined that "*a necessary link in the chain* between the Properties and the alleged Venezuelan misappropriated funds to purchase them remains open." ECF#180:12; ECF#262:7; ECF#241:4 (emphasis added). In other words, the District Court recognized that Casa's constructive trust theory relied on an indirect "chain" of tracing based on conclusory allegations untethered to well-pled supporting facts. And far from requiring "direct evidence," the District Court merely determined that there was a missing "link" in Casa's chain, which determination was charitable because there were no facts alleged at all sufficient to support "tracing." While "tracing can be direct or indirect," (IB:47), there must be a tracing. To state a claim, a "plaintiff must plausibly allege all the elements of the claim for relief." *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1339 (11th Cir. 2017). The burden is on Casa to plead specific facts sufficient to show that "the real properties … are 'directly or indirectly' traceable to the misappropriated funds." ECF#60:16 (*quoting In re Fin. Federated Title & Tr., Inc.*, 347 F.3d 880, 891 (11th Cir. 2003)). Pleading "mere possibility" is "insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-*

18

*Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). Thus, "[a] court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).

Casa's attempt to lower its burden by claiming that tracing can be established through "inferences" drawn from "circumstantial evidence" is defective. IB:44. Casa concedes that Florida law permits a constructive trust to be imposed "only if the trust res is *specific, identifiable property* or if it can be *clearly traced* in assets of the defendant which are claimed by the party seeking such relief.'" IB:46-47 (quoting *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995)) (emphasis added). Casa did not plead any specific facts adequate to show a plausible constructive trust claim.

Casa's cited cases are irrelevant, distinguishable, and ultimately do not help Casa's arguments. Three of the cases did not even involve a tracing analysis. Rather, *Marcucchi* involved whether a daughter had promised to reconvey homestead property to her father after inheriting title from her mother, thereby entitling the

father to a constructive trust over property sale proceeds. *Marcucchi v. Hardy*, 65 F.3d 986, 990 (1st Cir. 1995). The question was whether, as a matter of law, an "express promise" was required, or whether an "implicit promise" would suffice. Circumstantial evidence showed an "implicit promise" existed, meeting the burden of proof to establish a binding agreement to reconvey the home. There was no question that the home was traceable to the breach of that binding agreement; Tracing was not even at issue.

In *Unanue*, circumstantial evidence demonstrated that a debtor's title transfer to his wife was merely nominal and with the understanding that he retained beneficial ownership of the property. *Goya Foods, Inc. v. Unanue*, 233 F. 3d 38, 45 (1st Cir. 2000). Thus, the case concerned whether a legal obligation existed, not whether the property at issue was traceable to the breach of that obligation.

Lastly, in *One Parcel*, a wife claimed entitlement to a constructive trust over forfeitable real property, asserting she had made home improvements and that her husband had abused their confidential relationship by engaging in drug-related criminal activity. *U.S. v. One Parcel of Real Estate at 3229 S.W. 23rd Street, Miami Fla.*, 768 F. Supp. 340, 346 (S.D. Fla. Jun. 26, 1991). The court held that "no constructive trust was created" by the improvements in the absence of a promise by the husband to deed a portion of the property in return, and noted "in passing, … that there [was] circumstantial evidence in the record indicating that Claimant may

20

have been aware of her husband's illegal activity." *Id*.  This case centered on whether the wife had a legal interest in the forfeitable property, rather than traceability.

In *U.S. v. Benitez*, 779 F.2d 135, 140 (2nd Cir. 1985)—the only case cited by Casa that involves tracing—no tracing analysis was required because the defendant had previously "acquiesced in the release of any claim to the" fund at issue in exchange for a bail reduction and did not object to the identification of the funds as "contraband" and "fruits of the crime." And given that "[a]fter the surrender of the property, [the defendant] did not even have the money to make his own bail," the Second Circuit held that it was "reasonable to infer from this acquiescence that [the defendant] *could not* prove that any part of the fund was his own property." *Id*.

None of these cases support Casa's argument that its proffered "circumstantial evidence" satisfies its tracing burden. Because there were no facts alleged whatsoever to show tracing to Properties, Casa's constructive trust claim was properly dismissed.

## B. Casa's so-called "circumstantial evidence" does not satisfy its heightened tracing burden.

Casa's cited "circumstantial evidence" does not support its conclusory allegation that the Respondents' Properties "were purchased by Gorrin (through shell entities) with misappropriated Venezuelan funds that he obtained through an illicit and corrupt foreign currency exchange scheme," (ECF#60:2), and falls far short of the burden required.

Casa claims that its "allegations and supporting evidence demonstrate"[9] that: (1) "Gorrin received *tainted funds* by bribing Andrade and Diaz to receive preferential currency exchange contracts wherein Gorrin *profited from spreads obtained via currency exchange on the black market*;" (2) "Gorrin used *these funds* to purchase [unspecified] *properties* via [unspecified] *shell companies* in the United States;" (3) the Respondent Entities "are entities which Gorrin controlled and used to obfuscate ownership of [unspecified] *properties* purchased;" and (4) the Respondent Entities "purchased the Properties in South Florida during the period Gorrin was operating his scheme." IB:48-49 (emphasis added).

Casa concedes, and its cited evidence confirms, that the so-called "tainted funds" were not obtained from Venezuela during any currency exchange between Gorrin and Venezuela. Instead, the funds represent profits generated from arbitrage opportunities that later arose when the exchange house engaged in parallel market trading—*i.e.*, "spreads obtained via currency exchange on the black market." IB:48. Casa's Motion to Commence, along with the Andrade Proffer and OFAC Press Release, confirm as much. ECF#60:5(¶10); ECF#60-6:3; ECF#60-5:3. Thus, Casa

---

[9] Casa appears to have abandoned the argument that its conclusory allegation that Gorrin used misappropriated funds to purchase the Properties "must be accepted as facts." ECF#251:17-18. Courts, of course, are not required to accept legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555 (cleaned up). On a motion to dismiss, courts can disregard conclusory statements unless backed by factual support. *Iqbal*, 556 U.S. at 664.

acknowledges that its tracing analysis begins with funds that were not obtained from Venezuela in the first place.

Moreover, Casa's allegations and exhibits demonstrate that Venezuela benefited from the "currency exchange scheme." Casa claims that the ONT could exchange currency through either the Venezuelan National Bank or a brokerage, which could offer a better rate by profiting from the parallel market. ECF#60-6:3(¶5); ECF#60:4-5. Thus, Andrade's Proffer and the DOJ Press Releases, upon which Casa relies, demonstrate that the currency exchange transactions occurred "at favorable rates for the Venezuelan government." ECF#60-7:2; ECF#60-8:2; ECF#60-11:2.

The tracing analysis ends there, given that a constructive trust is a "right of reclamation" in which the "rightful owner" of misappropriated property "is entitled to have his original interest restored in his property which was wrongfully taken." *Republic of Haiti v. Crown Charters, Inc.*, 667 F. Supp. 839, 843 (S.D. Fla. 1987); *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1029 (11th Cir. 1995).[10]

---

[10] The Respondents did not elaborate on this particular challenge to Casa's constructive trust theory below. However, the Court may "affirm on any ground supported by the record, regardless of whether that ground was relied upon or even considered below." *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019) (quoting *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017)).

Nevertheless, even if the "tainted funds" were Venezuelan misappropriated funds, Casa's evidence does not link them, even indirectly, to the Respondents' Properties. ECF#283:22 ("The Motion and all supporting documents, including the OFAC findings, are devoid of allegations connecting the Funds to the specific Properties.") (citing *Bender*, 51 F.3d at 1030)).

As the District Court noted, "while the referenced [OFAC Press Release and OFAC Chart] lists the Respondent Entities, it makes no specific mention of the Properties," ECF#180:12; ECF#241:4; ECF#262:6; ECF#262:13, and "[t]he OFAC block does not establish that the Funds were used to buy these Properties specifically; there is only a reference to properties generally" (ECF#283:22). Indeed, The OFAC Press Release generally references funds "invested in ***domestic and international property, aircraft, yachts, horses, and other luxury goods***." ECF#-5:6 (emphasis added). The OFAC Chart likewise generally references investments "***in U.S. and abroad***, ***in properties and assets***," and includes symbols of a building, horse, airplane, yacht, and jewelry. ECF#60-13 (emphasis added). Therefore, the District Court correctly held that "these proffers fail to provide a factual basis for the necessary link between the misappropriated Venezuelan funds and the Properties." ECF#262:13.

The District Court correctly found that Casa's expert's property records, showing the address, legal description, and acquisition date for each property, only

indicated that Respondents own or control properties in South Florida, without proving any link between the Funds and the properties. (ECF#283:22-23).

Casa attempted to "close this loop by noting the inclusion of the Properties in the forfeiture section of the [Superseding Indictment]" as substitute property, ECF#180:12; ECF#241:4; ECF#262:6), and mistakenly concluding that it meant the Properties were "derived from proceeds traceable to [the] offense." ECF#60-14:11. The District Court correctly found this reasoning to be flawed because the "substitute property" classification under 21 U.S.C. § 853(p) "does not render [the Properties] tainted, but simply allows the government to seize any other property of the defendant, up to the value of tainted property—rather than the tainted property itself." ECF#262:13-14; ECF# 180:12 (quoting *Honeycutt v. United States*, 581 U.S. 443, 452 (2017)). Thus, the District Court held that the Superseding Indictment did not support Casa's conclusion that the Respondents' Properties "were purchased with Venezuelan misappropriated funds. *Id*.

Casa does not address or challenge the fact that the Superseding Indictment's substitute property classification contradicts its interpretation that the Properties are "derived from proceeds traceable to the offense." ECF#60:10(¶31). Instead, Casa mischaracterizes the District Court's ruling by claiming it "treated the listing of the Properties as 'substitute' as conclusive proof of no connexity," and argues that "the mere listing of some of the Properties as 'substitute' is not dispositive," as the

government can later reclassify substitute assets as tainted in civil forfeiture proceedings. IB:49-50.[11] But the District Court did not treat the substitute classification as definitive proof of no connexity; rather, it found that the allegations failed to connect the misappropriated funds to the Properties.[12] This conclusion remains well-founded—the Superseding Indictment is an insufficient basis to establish traceability. And Casa's assertion that "[t]he Fisher Island Property is not listed" and "[a]t a minimum, the indictment has no bearing on that property" does not help its position. As to the Fisher Island Property, what remains of Casa's "circumstantial evidence" is limited to the property records, which do not come close to substantiating any tracing. ECF#289:22 ("[A] determination that the Fisher Island Property was acquired in 2009, coupled with OFAC's general findings, does not establish the necessary link with the Funds warranting a constructive trust.").

### III.    Casa's Claim is Prohibited by the Act of State Doctrine.

"The act of state doctrine is not some vague doctrine of abstention but a '*principle of decision* binding on federal and state courts alike,'" whereby "the act within its own boundaries of one sovereign State … becomes … a rule of decision

---

[11]    Casa's speculation on reclassification in a future civil forfeiture action is irrelevant, as any such action would be time-barred under 19 U.S.C. § 1621. And in any event, Casa adopted the superseding indictment's classification of the Properties as substitute properties and Casa cannot avoid its own factual allegations.

[12] On the contrary, it is Casa that relied on the Superseding Indictment as proof of connexity; but the proof it relied on actually proves the opposite.

for the courts of this country." *W.S. Kirkpatrick & Co., Inc. v. Envt'l Tectonics Corp. Int'l*, 493 U.S. 400, 406 (1990) (citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 437 (1964), and *Ricaud v. Am. Metal Co.*, 246 U.S. 304, 310 (1918)) (emphasis in original).[13] "The doctrine does not simply relieve the foreign government of liability for its acts, but operates as an issue preclusive device, foreclosing judicial inquiry into the validity or propriety of such acts in litigation between any set of parties." *Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1271 (S.D. Fla. 2005), *aff'd* 450 F.3d 1251 (11th Cir. 2006). In other words, where a claim "necessarily hinge[s] on the asserted invalidity of an act of state, the act of state doctrine precludes [the] court from addressing these claims." *Id*.

In attempting to distance itself from the doctrine that proves fatal to its case, Casa argues that "invalidation of the currency exchange contract is not an issue that the court 'must decide,'" claiming instead that the only issue "is whether Gorrin paid bribes that resulted in his acquiring assets under inequitable circumstances." IB:62. This oversimplification ignores both the law and—in a striking about face—Casa's own allegations and arguments made in the District Court.

---

[13] *Accord FOGADE v. ENB Revocable Trust*, 263 F.3d 1274, 1293 (11th Cir. 2001) ("The doctrine requires that 'the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.'") (citation omitted).

**A. The District Court correctly applied the act of state doctrine, as Casa's constructive trust claim would require invalidating Venezuela's currency exchange contracts.**

The District Court's application of the act of state doctrine rests on a simple premise: In order to impose a constructive trust, Florida law requires that Casa establish unjust enrichment. And because "the existence of an express contract … preclude[s] [an] unjust enrichment claim," *Team Servs. Inc. v. Securitas Electronic Sec., Inc*., 2023 WL 6890660, at *11 (11th Cir. 2023),[14] "the imposition of the constructive trust to satisfy the Judgment, turns upon whether the Venezuelan contracts can be invalidated to support Casa's unjust enrichment theory and therefore execute on the Properties." ECF#283:39.

Stated differently, the District Court properly recognized that Casa could not prevail on its unjust enrichment theory without first invalidating the underlying express contracts entered into by the Venezuelan government—a determination that would inevitably implicate the act of state doctrine. *See Glen*, 365 F. Supp. 2d at 1271 ("The doctrine . . . operates as an issue preclusive devise, foreclosing judicial inquiry into the validity or propriety of such acts in litigation").

Moreover, the District Court's analysis of the doctrine within the context of unjust enrichment makes perfect sense. Casa's Motion to Commence  alleged that it

---

[14] *See also Alhassid v. Bank of America, N.A*., 60 F.Supp.3d 1302, 1322 (S.D. Fla. 2014.

was seeking imposition of a constructive trust based on Florida law, further acknowledging that "[t]he necessary elements for an imposition of a constructive trust are '(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) *unjust enrichment*.'" ECF#60:14 (emphasis added). Casa then alleged that it satisfied the related elements of unjust enrichment, arguing that: "Andrade and Diaz conferred a benefit to Gorrin," "Gorrin knowingly and voluntarily accepted the benefit," Gorrin "retained hundreds of millions of dollars of sovereign funds," and "[i]t would be inequitable and unjust to allow Gorrin, and his shell entities, to retain the Venezuelan misappropriated funds (or the properties that he purchased with those funds)." ECF#60:15.[15]

These allegations underscore that Casa's underlying basis for seeking a constructive trust was its unjust enrichment theory based on the alleged misappropriation of Venezuelan funds. And Casa's reliance on this theory necessarily raised the question of whether unjust enrichment could be adjudicated by the District Court without assessing the validity of the express contracts entered into by the Venezuelan government as part of the alleged "currency exchange scheme." The District Court rightly concluded that Casa could not establish unjust

---

[15] *See generally Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) (reciting elements of unjust enrichment).

enrichment without the Court first deciding the underlying validity of the Venezuelan government's actions.

In an attempt to distance itself from its unjust enrichment theory and the Court's basis for applying the act of state doctrine, Casa ignores altogether the reasoning for the District Court's ruling, avoiding any mention of "unjust enrichment," and instead asserting simply that the sole question "is whether Gorrin paid bribes that resulted in his acquiring assets under inequitable circumstances." IB:62. This strained approach is intended to liken this case to *Kirkpatrick*, where the Supreme Court ruled that the act of state doctrine did not apply because the legality of the underlying contract was "simply not a question to be decided" in that suit. 493 U.S. at 406. Casa's tactic is unavailing.

Unlike this case, *Kirkpatrick* involved a suit by the losing bidder against a competitor who had pled guilty to bribing Nigerian officials to secure a government contract. *Id*. at 401-04. The defendants argued that the evidence of bribe payments would also render the government contract unlawful, and thereby trigger the act of state doctrine. *Id*. at 406. The Supreme Court disagreed, holding that "[r]egardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit[.]" *Id*. Thus, "the factual predicate for application of the act of state doctrine d[id] not exist"

since the issues to be decided did not "require the Court to declare invalid, and thus ineffective … the official act of a foreign sovereign." *Id*. at 405.

But "[u]nlike *Kirkpatrick*, this is not a case where the Court's findings might indirectly suggest the invalidity of a foreign sovereign's actions." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2022 WL 71662, at *4 (W.D.N.Y. Jan. 7, 2022); *see also Royal Wulff Ventures LLC v. Premiero Mining Corp*., 938 F.3d 1085, 1093-94 (9th Cir. 2019) ("Here, it is not simply a question of whether a given act—in *Kirkpatrick* a bribe—occurred; the questions Plaintiffs raise are as to the legality of the [sovereign act] itself"). Again, Casa can only succeed in obtaining a constructive trust if it proves that the Properties are derived from misappropriated Venezuelan funds obtained through the alleged "illicit and corrupt foreign currency exchange scheme."  ECF# 60:2. Unlike *Kirkpatrick*, therefore, the legality of the currency exchange contracts is central to this dispute—if the currency exchange contracts are valid and, therefore, did not result in any unjust enrichment, there can be no constructive trust remedy as to the Properties. Accordingly, the District Court's application of the act of state doctrine should be affirmed.

## B. Casa cannot pivot to a new theory of the case for the first time on appeal, and where Casa failed to raise the argument below.

Ignoring the unjust enrichment theory pled by Casa and addressed by the District Court, Casa argues instead that a constructive trust should be imposed *ex*

*maleficio*, which (according to Casa) would not require the invalidation of the underlying transaction. This argument fails for numerous reasons.

First, neither Casa's opposition to the Respondents' Motion for Judgment on the Pleadings, nor Casa's objections to the Magistrate's R&R, refer to a constructive trust imposed *ex maleficio*. Because Casa raises this argument for the first time on appeal, the Court need not consider it. *See Muhammad v. Citimortgage, Inc.*, 598 F.App'x 636, 640 n.2 (11th Cir. 2015) (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)); *see also FTC v. AbbVie Products LLC*, 713 F.3d 54, 65 (11th Cir. 2013). Similarly, Casa failed to object to the Magistrate's R&R on this basis. Casa's failure to make this argument at any point below amounts to a waiver. *See* 11th Cir. R. 3-1; *Macort v. Prem, Inc.*, 208 F.App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)).

Even if the issue were properly before the appellate court (which it is not), Casa's argument still fails. Despite its efforts to distance itself from its unjust enrichment theory, Casa ultimately concedes that it is seeks a constructive trust. IB:22 ("Casa's Amended Motion sought a constructive trust[.]"). And Casa cites no law suggesting that it is somehow relieved of its burden to prove the elements of a claim for constructive trust under Florida law (which it acknowledged in its own Motion to Commence)—including unjust enrichment.

32

And even if Casa could shift to an amorphous "*ex maleficio*" theory, it would not change the outcome. Regardless of how Casa frames its constructive trust theory, the core issue remains: granting Casa's request for a constructive trust would still require the Court to determine the legitimacy of the underlying acts of the Venezuelan government.

Casa's attempt to avoid the act of state doctrine and disavow its own express claims was rightly characterized by the Magistrate Judge as "schizophrenic," (ECF#267:100), because the legality of the foreign sovereign's actions is plainly central to, and inextricably intertwined, with all of Casa's claims—Casa's claims are predicated on attacking acts of state: Casa's Motion to Commence alleges the following:

- "[T]he Venezuelan National Treasury … is responsible for managing the country's public funds and finances." ECF#60:4(¶7).

- "As the Venezuelan National Treasurer, Andrade had a confidential relationship with Venezuela, which charged him with fiduciary obligations to oversee the management of sovereign funds deposited in ONT accounts." ECF#60:5(¶ 14).

- "In breach of his fiduciary duties, Andrade . . . permitted Gorrin (and other regime insiders) to misappropriate billions of dollars from Venezuela." ECF#60:6(¶ 15).

- "When Andrade stepped down as National Treasurer, he introduced Gorrin to his successor, Diaz[.]" ECF#60:7(¶19);

- "As the Venezuelan National Treasurer, Diaz had a confidential relationship with Venezuela, which charged her with fiduciary obligations

33

to administer and protect the sovereign funds deposited in ONT accounts" ECF#60:7(¶20).

- "Diaz breached her fiduciary duties to Venezuela[.]" ECF#60:7(¶21).

- "The breaches of fiduciary duty committed by Diaz and Andrade directly and proximately caused damages to Venezuela." ECF#60:7(¶22)

- "Andrade and Diaz, as the National Treasurers, were in a confidential relationship with Venezuela *because they acted as 'an official of the government and a department and agency of the Venezuelan government.'*" ECF#60:14-15 (emphasis added).

- "*As the National Treasurers of Venezuela*, Andrade and Diaz conferred a benefit to Gorrin … with the sovereign funds deposited in ONT accounts." ECF#60:15 (emphasis added).

Thus, the Magistrate Judge rightly noted that "[n]o amount of word play on the part of [Casa] can negate [the] reality" that "for [Casa] to obtain the relief it seeks in these proceedings supplementary, the Court must find that the acts of the two Venezuelan Treasurers were a breach of trust; hence illegitimate." ECF#262:19-20. And the District Court correctly agreed. *See* ECF#283:39. Because the Court cannot do so without contravening the act of state doctrine, Respondents are entitled to judgment on the pleadings with respect to their act of state doctrine affirmative defense.

## IV. The Properties are Immune from Attachment and Execution under the FSIA.

The Magistrate Judge and District Court Judge rejected several arguments Casa advanced seeking an exemption to Venezuela's FSIA immunity that it has

abandoned on appeal. For example, Casa does not appeal the District Court's conclusion that the Fiscal Agency Agreements ("FAAs") pertaining to the underlying bond dispute with Venezuela cannot independently waive FSIA immunity. ECF#283:30-31. And Casa does not appeal the District Court's conclusion that "the ownership of the Properties was sufficiently addressed in the R&R[.] ECF#283:32-33. Instead, Casa's appeal of the District Court's holding that the Properties are immune from execution and attachment under the FSIA is limited to two issues—(1) whether alleged commercial activity after the inception of suit may serve as the basis for an exemption from FSIA immunity under Section 1610(a) (IB:50-52) and (2) whether Venezuela is exempt from FSIA immunity under Section 1610(a) through that alleged commercial activity (IB:52-60). This Court should reject Casa's arguments, repeated now for the third time, with respect to both issues.

## A. The District Court applied the correct relevant time period of the alleged commercial activity.

Casa is wrong that (1) the "District Court relied upon *TIG Ins. Co. v. Republic of Argentina*, 967 F.3d 778, 782-785 (D.C. Cir. 2020) to conclude commercial use must occur prior to filing suit," and that (2) such reliance would constitute error in any event. IB:50-53.

*First*, the District Court correctly concluded that "Venezuela did not assign its litigation rights to Casa. As such, Casa's argument that commercial activity occurred

because of an assignment of litigation rights fails." ECF#283:35.[16] This Court need go no further—and any consideration by the District Court of the effect of the *timing* of that assignment of rights on the existence of FSIA immunity was not necessary to its judgment and accordingly not subject to review by this Court on appeal. *See Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 29 (1st Cir. 2018) (finding the court lacked jurisdiction to review statements not "in any sense necessary to the district court's judgment"); *see also California v. Rooney*, 483 U.S. 307, 311 (1987) ("This Court reviews judgments, not statements in opinions." (internal citation omitted)); *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (dicta is "a statement that neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case.").

*Second*, the District Court did *not* decide whether an alleged commercial use must occur prior to filing suit to pierce FSIA immunity in any event. Contrary to Casa's contention, nowhere did either the Magistrate Judge or the District Court

---

[16] Casa had haphazardly pointed to a Venezuelan law that was enacted on February 21, 2022, which Casa claimed "incentivized creditors of the Republic to sue 'the holders of Venezuelan assets obtained through acts of corruption.'" ECF#251:6 (citing ECF#149-2:6). But Casa later conceded that "it failed to consider what the necessary legal requirements are to establish the purported assignment of litigation rights and whether the [Venezuelan] law met those requirements." ECF#283:8. In any event, the supposed assignment would not confer standing because it postdated the commencement of Casa's action against the Respondents. ECF#283:30 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570-71, n.5 (1992) ("Standing must be determined as of the commencement of suit.")).

Judge rely upon *TIG Ins. Co. v. Rep. of Argentina*, 967 F.3d 778 (D.C. Cir. 2002).[17]

Instead, the District Court properly rejected consideration of Casa's objection to the

R&R regarding the timing of the alleged commercial use because Casa failed to

provide any basis for its objection. That is, the District Court held that because

"Casa's unsupported assertion provides no authority for its argument in violation of

S.D. Fla. L.R. Mag. R. 4(b) … Casa failed to provide a basis to sustain its

objection."[18] ECF#283:34. The District Court was correct—while Casa conceded

before the District Court that the R&R "correctly notes that the Proposal occurred

after the commencement of the supplementary proceeding," Casa cited *no* authority

for its proposition that the time of filing suit is "irrelevant for purposes of the

'commercial activity' FSIA analysis." ECF#276:15. This Court should reject Casa's

belated attempt to substantiate its objections on appeal.

 *Third*, if this Court *were* to consider the question of whether Casa's

"concession that Venezuela's alleged commercial activity had not begun before

commencement of this suit is fatal to its alleged showing of commercial activity,"

ECF#281:10, it should follow the time-of-filing rule to bar Casa's claim. *See TIG*

---

[17] Indeed, the District Court's only mention of *TIG* at all was its recitation that "Respondents argue commercial activity for purposes of FSIA immunity must be established at the time the suit was filed, such as standing, and cite to *TIG Ins. Co. v. Rep. of Argentina*, 967 F.3d 778 (D.C. Cir. 2002). In *TIG Ins.*, the D.C. Circuit held 'time of filing approach best accords with the text and purpose of the FSIA.' *Id.* at 782." ECF#283:34.

[18] *See* 11th Cir. R. 3-1; S.D. Fla. L.R. Mag. R. 4(b); *Macort,* 208 F.App'x at 783.

*Insurance Co.*, 967 F.3d at 782 (collecting cases and holding that the "time-of-filing approach best accords with the text and purpose of the FSIA."); *Bainbridge Fund, Ltd. v. Republic of Argentina*, 102 F.4th 464, 467-8 (D.C. Cir. 2024) ("We look to the totality of the circumstances *at the time the application was filed* to determine whether a property is 'used for a commercial activity.'" (emphasis added)). Each of Casa's attempts to distinguish *TIG* and the time-of-filing rule fail.

As an initial matter, Casa argues that "*TIG* does not address whether the commercial use exception can attach post-filing." IB:50. Casa is wrong—*TIG* squarely reasoned that under its test "a property would not be found to be commercial if it had never yet been used for commercial activity" at the relevant time. *TIG Ins. Co.*, 967 F.3d at 787.

Next, Casa contends that *TIG* "did not hold the commercial use exception only applies at the time of filing." IB:50-1. In endorsing the time-of-filing rule, *TIG* left it "to district courts to elaborate, case-by-case, how they find particular factual circumstances to bear on a property's asserted commercial use." *TIG Ins. Co.*, 967 F.3d at 787. But, beyond identifying that there might be factual circumstances relevant to consider under *TIG*'s rule as a general matter, Casa points to no error in how the Magistrate Judge or District Court Judge assessed the factual circumstances of the alleged commercial use under the time-of-filing rule here.

Lastly, the Court should reject Casa's reliance on *Bartlett v. Baasiri*, 81 F.4th 28, 33 (2d Cir. 2023) to infer that post-suit conduct is relevant from the fact that sovereign immunity can attach after suit. That immunity may attach upon sovereign acquisition of property to promote the purposes of such immunity, does not make post-suit sovereign commercial use relevant to the jurisdictional issue, which focuses upon the time of filing suit. *See id.; Dole Food Co. v. Patrickson*, 538 U.S. 468, 480 (2003) (FSIA jurisdiction of instrumentality determined as of the filing of the complaint).

## B. The District Court correctly found there was no commercial activity by Venezuela.

The Magistrate Judge and the District Court Judge correctly determined that Venezuela did not use the Properties for commercial activity. ECF#283:33-36.

*First*, the District Court correctly concluded that "Venezuela did not assign its litigation rights to Casa. As such, Casa's argument that commercial activity occurred because of an assignment of litigation rights fails." ECF#283:35. The Court should reject Casa's claim that deciding no authorization occurred was an error requiring reversal, or that the Appellees' denial alone creates a factual dispute necessitating reversal. IB:72.

*Second*, the District Court was correct to follow the Fifth Circuit's holding in *Galactica Star* that "only the foreign state itself can waive its sovereign immunity through its own actions" in rejecting Casa's attempt to strip Venezuela of immunity.

*United States v. M/Y Galactica Star*, 13 F.4th 448, 459 (5th Cir. 2021) (collecting authority); *accord Rubin v. Islamic Republic of Iran*, 830 F.3d 470, 481 (7th Cir. 2016) ("a third party's commercial use of a foreign state's property does not trigger the § 1610(a) exception to execution immunity. Rather, § 1610(a) applies only when *the foreign state itself* has used its property for a commercial activity in the United States"), *aff'd,* 583 U.S. 202, 138 S. Ct. 816 (2018). As the District Court reasoned, *Galactica Star* was "instructive" because there a "judgment creditor seeking attachment argued Nigeria used its claims to ask for and to participate in the sale of the yacht in the United States," not conducted by Nigeria, which was "insufficient to trigger a waiver of immunity by the sovereign." *Id*. at 459.

Casa's attempt to distinguish *Galactica Star* by claiming that "Venezuela—like the US [sic] in *M/Y Galactica*—is the party using the Properties in commercial activity" is misplaced. IB:59. In *Galactica Star*, as Casa itself explains, the "US [sic] orchestrated the sale, entered into the purchase agreement with the winning bidder, and received the funds from the buyer." IB:59. Under no rational interpretation of the facts here can Venezuela itself have acted in a similar capacity such that it "used" the Properties for commercial activity in the United States under Section 1610—indeed, by Casa's own argument, Venezuela's "activity" was nothing more than "guaranteeing repayment of debt secured by specific properties in exchange of a conditional waiver of other collection efforts." IB:57. Of course, Venezuela did not

even do that much, and even if it had, that would not be using the Properties for commercial activity.

Casa's description of itself as a "conduit" for Venezuela is the case in point—even under Casa's own framing, only *Casa* could have attempted to "use" the Properties for any alleged commercial activities here, and would likewise be barred by *Galactica Star.* IB:59. And Casa's related attempt to argue, without any explanation, that "Venezuela 'used' the property" within the meaning of that term under Section 1610 likewise fails. IB:59-60. Under Section 1610, even receiving "revenue from a commercial transaction does not have the instrumental relationship to the commercial activity denoted by the phrase 'used for;' it is not put in service of that activity, instead it is the end result or income from the activity." *Connecticut Bank of Com. v. Republic of Congo*, 309 F.3d 240, 254 (5th Cir. 2002), *as amended on denial of reh'g* (Aug. 29, 2002). The commercial activity Casa claims—that Venezuela "pledged" the properties to "guarantee" judgment payment—is even weaker than receiving revenue from a transaction. IB:52-60. Casa only argues that the Properties might indirectly generate "income" for Venezuela upon successful execution, not that they are actively "put in service" for a commercial transaction. *Connecticut Bank,* 309 F.3d at 254.

*Third*, as the District Court concluded, Casa's argument that merely guaranteeing repayment of debts could constitute commercial activity under a

"venturing into the marketplace" standard still "fail[s] to provide supporting authority pursuant to 28 U.S.C. 1610(a)" (ECF#283:36) because it continues to erroneously rely on case law—*Guevara*, *Honduras Aircraft*, and *Weltover*—arising under 28 U.S.C. § 1605. IB:56-7. The District Court was correct to conclude "Casa failed to provide a basis for sustaining an objection to this portion of the R&R" and to overrule its objection. ECF#283:36.

This is not "a distinction without a difference" as Casa contends. IB:58. To the contrary, "[c]ourts have long recognized that the FSIA's two 'commercial activity' exceptions are substantively different, and that these differences reflect a deliberate policy choice by Congress." *Licea v. Curacao Drydock Co.*, 794 F. Supp. 2d 1299, 1303 (S.D. Fla. 2011). And "Section 1610's exception from execution is narrower than Section 1605's exception from jurisdiction generally." *Id.*; *Connecticut Bank of Com. v. Republic of Congo*, 309 F.3d 240, 256 (5th Cir. 2002), *as amended on denial of reh'g* (Aug. 29, 2002) (Section 1610's "exception to executional immunity is crafted using the more specific 'used for' language instead of the broader "in connection with" language" under Section 1605). The District Court's finding that Venezuela is immune under the FSIA from Casa's attempt to execute or attach the Properties should be affirmed.

### V.    Casa Failed to Establish Ancillary Jurisdiction.

Casa next contends that the District Court was "mistaken" in finding that it lacked ancillary jurisdiction to adjudicate Casa's constructive trust claim. IB:63. According to Casa, because the assets are "in effect" Venezuela's assets, this case cannot be characterized as one in which Casa is attaching a third party's property. IB:64. Both the Magistrate Judge and the District Court Judge correctly rejected these arguments, and this Court should do the same.

Relying upon *Peacock v. Thomas*, 516 U.S. 349, 359 (1996), the Magistrate and District Court rejected Casa's invocation of ancillary jurisdiction, finding Casa could not execute its judgment against third parties based on "legal theories unrelated to its initial suit for non-payment of bonds against Venezuela." ECF#283:42. *See* ECF#262:20-21, *adopted*, ECF#283:39-43.   In so doing, both courts correctly rejected Casa's argument that this case should be analyzed as a fraudulent transfer case, distinguishing it from the post-judgment Florida Fraudulent Transfer Act case of *Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783 (11th Cir. 2015), as cited by Casa. ECF#262:20, *adopted*, ECF#283:40-41 ("nor has Casa sought a legal determination pursuant to the Fraudulent Transfer Act, as in *Nat'l Mr. Servs*."). As the courts below properly recognized, Casa could not premise ancillary jurisdiction on the Fraudulent Transfer Act where Casa had failed to plead any such basis for jurisdiction. ECF#262:20, *adopted*, ECF#283: 41-42.

43

Casa appeals this ruling and renews its faulty claim that this suit is "more akin to a fraudulent transfer action." IB:40. That is, Casa claims that the Properties actually belong to Venezuela, not Respondents, and that Venezuela somehow fraudulently transferred them to Respondents.  IB:64. But fatally, the only Venezuelan conveyance pled by Casa involves payments made pursuant to currency contracts which long preceded Casa's 2020 judgment on unrelated bond obligations.

A fraudulent transfer claim requires a judgment debtor to knowingly and fraudulently transfer property to hinder a ***known payment obligation*** to a creditor. *SE Property Holdings, Inc. LLC v. Welch*, 65 F.4th 1335, 1343 (11th Cir. 2023); *see also* Fraudulent Transfer Act, Fl. Stat. § 726.105(1). As the District Court accurately found, the Venezuelan conduct at issue was not pled to have hindered payment of Casa's judgment. *See* ECF#283:24. Thus, as the District Court found, Casa did not (and could not) plead a fraudulent transfer claim. This finding is unrebutted by the Initial Brief, which fails to explain how transfers of money on a currency exchange that occurred years prior to judgment based on unpaid bonds constitute transfers designed to hinder payment.

Moreover, fraudulent transfer claims address the fraudulent intent of the transferor (here, Venezuela), but Casa has pled that the funds were *misappropriated* from Venezuela, rather than that Venezuela was a perpetrator of any fraud (ECF#60:2).

44

These facts closely mirror the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996). In *Peacock*, the plaintiff sued his former employer and its officer for breaching fiduciary duties under ERISA. The district court found only the employer liable, as the officer was not deemed a fiduciary. While the case was on appeal, the officer settled accounts with favored creditors, including himself, depleting the employer's assets. After the judgment was affirmed and collection efforts against the employer failed, the plaintiff sued the officer, seeking to pierce the corporate veil. The district court ruled in favor of the plaintiff, and the appellate court upheld this decision, affirming the district court's exercise of ancillary jurisdiction over the lawsuit against the officer.

However, the Supreme Court reversed, holding that federal courts lack ancillary jurisdiction "over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." *Id.* at 351. The Supreme Court further noted that while it has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties … [it has] never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id*. at 356-57.

45

*Peacock* is squarely on point. As in *Peacock*, Casa seeks to hold the Respondents liable for its money judgment against Venezuela. That is, Casa plainly seeks to impose liability on persons "not otherwise liable for the judgment." 516 U.S. at 351. And Casa aims to use "ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id*. at 356-57. But as *Peacock* makes clear, ancillary jurisdiction does not lie in this circumstance.

Accordingly, this Court should affirm the District Court's Order finding that ancillary jurisdiction is lacking.

### VI.    Casa Cannot Maintain *Lis Pendens* over the Properties Without a Viable Constructive Trust Claim or an OFAC License.

Given the District Court's ruling granting the Respondents' Motion for Judgment on the Pleadings on *five* different grounds, the District Court did not err in allowing Casa's *lis pendens* to lapse.[19] ECF#283:43; *Jameson v. Jameson*, 163 So. 468, 468 (Fla. 1935) (cancellation of *lis pendens* proper following dismissal); *Walsh v. Abate*, 336 So. 3d 50, 54 (Fla. 4th DCA 2022) (same).

Nevertheless, the District Court independently analyzed Casa's request pursuant to Fla. Stat. 48.23(2). Casa does not appeal the standard applied by the

---

[19] Casa had filed Notices of *Lis Pendens* n the Respondents' Properties on January 23, 2023, which expired on January 22, 2024. ECF#132-139. Casa sought to extend the *lis pendens* pursuant to Fla. Stat. 48.23(2). ECF#222:1-2.

District Court. Thus, it is undisputed that "the proponent of a *lis pendens* must establish a good faith basis for its claim 'which required some proof, even minimal, that supports the proponent's allegations that the property at issue is directly connected to the proponent's claim.'" ECF#283:44 (quoting *Drummond v. Alsaloussi*, 2023 WL 3970958 (S.D. Fla. June 13, 2023)). The District Court found that "Casa's allegations fail to demonstrate a link between the misappropriated Venezuelan funds and the Properties that are the subject of the *lis pendens*." *Id*.; ECF#241:8. On appeal, Casa merely asserts that "connexity has been sufficiently alleged," but, as explained above, in Section II, Casa's constructive trust claim fails.

Casa's appeal primarily challenges the Magistrate and District Court's holding that "an extension of the *lis pendens* would be in contravention of OFAC regulations," specifically, 31 C.F.R. §§ 591.202(a), (e), which provides that "unless licensed … any attachment, judgment, decree, lien … or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201." IB:83-85; ECF#283:45 ("Without an OFAC license, any 'judicial process is null and void' with respect to the Properties or any interest therein.").[20]

---

[20] Casa's October 21, 2021 application for a license to execute U.S. judgments against Venezuela (ECF#54-1) was denied (ECF#54-2). OFAC explained that Casa was attempting to satisfy a judgment against Venezuela by pursuing assets belonging to Gorrin  who is a separate individual (not Venezuela), and therefore OFAC would not authorize the license. ECF#54-2:2.

However, the District Court found that Casa's only argument on appeal from the Magistrate's order— "that a notice of *lis pendens* is not a lien" — "did not engage with these findings or the sanctions" and, thus, "Casa failed to argue why the Order is clearly erroneous." ECF#283:45.[21] Therefore, Casa waived the right to appeal this portion of the Magistrate's Order. 11th Cir. R. 3-1. And while this Court "*may*, but [is] not bound to, review for plain error if the plain interests of justice exception applies," *Plair*, 2024 WL 1480406, at *3, "[t]hat 'rare exception doesn't apply here because [Casa] didn't argue in [its] initial brief that reviewing [its] waived objections was necessary and in the interests of justice." *Smith*, 106 F.4th at 1099. Thus, Casa's untimely appeal on this point should be rejected.

And Casa's reiteration of its argument that a *lis pendens* "does not create a property interest" (IB:85), fails for the same reason it failed below— "sanctions are not limited to liens" (ECF#283:45). Casa does not deny that a *lis pendens* constitutes "judicial process," nor could it because *lis pendens* are issued under Chapter 48 of the Florida Statutes governing "Process and Service of Process." Fla. Stat. § 48.23. And Casa's argument that the District Court's reasoning concerning "judicial process" would render it unable to "rule on a single motion below" (IB:84) fails because, as the Magistrate Judge noted, Casa sought an "order [that] would give the

---

[21] Instead, Casa sole argument below was that a notice of *lis pendens* is not a lien, nor can it operate as one." ECF#283:45. Since "sanctions were not limited to liens," this argument was rejected. *Id*.

Court's imprimatur to the recording of the Notices of Lis Pendens … in contravention of the OFAC regulations." ECF#241:9-10.

Lastly, Casa downplays the effect of a *lis pendens* as merely giving "notice to future purchasers or encumbrancers of suit that *could* affect title" and argues that "at worst, an order extending *lis pendens* has no effect unless the party seeking the extension obtain an OFAC license." IB:84. But, Casa cannot seriously dispute that "[t]he effect of a lis pendens on the owner of property, however, is constraining. For all practical purposes, it would be virtually impossible to sell or mortgage the property because the interest of a purchaser or mortgagee would be subject to the eventual outcome of the lawsuit." *Beefy King Int'l, Inc. v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972). The District Court did not abuse its discretion and the denial of Casa's request to extend its *lis pendens* over the Respondents' Properties should be affirmed.

## VII.  The District Court Lacked Personal Jurisdiction Over Gorrin.

Casa claims it sufficiently alleged specific personal jurisdiction over Gorrin on the basis that he either "carried on a business venture in Florida by using [the Respondent Entities] to rent and list for sale the Properties" or he "committed a tort in Florida through his knowing participation in a breach of trust by Andrade and Diaz." IB:52-53 (citing Fla. Stat. §§ 49.193(1)(a)(1),(1)(a)(2).

49

The core flaw in Casa's argument is that "a constructive trust is the *raison d'etre* for these proceedings supplementary" (ECF#262:10), and "Casa cannot establish personal jurisdiction under a 'disjointed theory' whereby personal jurisdiction exists based on acts related to a tort, but unrelated to the relief sought for that tort" (ECF#283:6).

This is crucial because specific jurisdiction under Florida's long-arm statute "requires a claim specific analysis" with "allegations *both*: (i) that the defendant does one of the enumerated acts within Florida, *and* (ii) that the plaintiff's cause of action 'arise from' one of the enumerated acts occurring in Florida." *D-I Davit Int'l-Hische GMBH v. Carpio*, 346 So. 3d 197, 201 (Fla. 3d DCA 2022) (emphasis on original). In other words, "the purported connexity to Florida must relate to the actual tort alleged." *Id*. Apart from Casa's failure "to show connexity to the constructive trust it seeks," the District Court correctly concluded that "Casa failed to satisfy either asserted prong of Florida's long arm statute upon which it relies." ECF#283:15.

## A. Casa failed to establish that Gorrin was conducting business under the prevailing Eleventh Circuit factors.

Casa claims that the District Court imposed a profitability requirement for specific personal jurisdiction. IB:56. Not so—the District Court referenced and distinguished language from the Florida case that Casa itself relied upon, *Labbee v. Harrington*, 913 So.2d 679 (Fla. 3d DCA 2003), which allowed for personal

jurisdiction over a defendant who had engaged in a lengthy pattern of conduct for the purpose of generating a profit.

In *Labbee*, the Florida Supreme Court held that the defendant's actions—owning real estate for rental profit for over 20 years *and* subsequently selling it—constituted a business venture that justified personal jurisdiction under Florida's long-arm statute. *Id*. at 683 (emphasis added). Relying on this precedent, the District Court reviewed Casa's evidence, including certain website listings for some of the Properties at issue. ECF#283:17(n.7). The District Court found that Casa's submissions failed to demonstrate the consistency required to establish a business venture, and instead showed sporadic attempts to rent or sell various properties, nearly all of which were ultimately abandoned with no resulting rental or sale. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (requiring collective establishment of "general course of business activity in the state for pecuniary benefit.").

Even regarding the single rental that allegedly occurred, the District Court noted that Casa had not established that the property was rented for profit or in a manner consistent with the pattern in *Labbee*. ECF#283:17. In this context, the Court was not imposing a profitability requirement but instead distinguishing Casa's cited precedent from Casa's actual evidence.

As the District Court accurately noted, Casa also did not attempt to meet the standard set forth in *Horizon Aggressive Growth, L.P. v. Rothestein-Krass, P.A.*, 421 F.3d 1162 (11th Cir. 2005). Nor does Casa attempt to do so on appeal. Under *Horizon*, Casa would need to demonstrate that the defendant maintained an office in Florida, held a license to conduct business in the state, served a significant number of clients in Florida, and derived a notable portion of its revenue from Florida. *Id*. at 1157. The District Court rightly observed that Casa failed to meet these requirements. ECF#283:16.

**B. Casa failed to demonstrate a connection between the alleged tortious conduct—bribe payments made to accounts in South Florida—and the constructive relief sought concerning unrelated Properties.**

Casa also challenges the District Court's holding that it failed to establish personal jurisdiction over Gorrin for "[c]ommitting a tortious act within this state" under Fla. Stat. 48.193(a)(2). IB:40-42; *see* ECF#262:9-10; ECF#283:6. As an initial matter, this jurisdictional basis was not alleged in Casa's Motion to Commence. *See* ECF#60:11(¶34) (pleading only carrying on business venture). Thus, it should be rejected outright. *See Phillips v. Smith*, 429 F.App'x 905, 908 (11th Cir. 2011) (unraised issues not considered on appeal). Moreover, the only tort alleged by Casa involved inducing a breach of trust in Venezuela related to that country's currency exchange contracts—tortious acts that, as both the Magistrate Judge and District

Court Judge correctly concluded, lack any connection to the Properties central to Casa's constructive trust claim. *See* Section II, *supra*.

Casa does not directly address this finding, but instead offers the misdirected critique that the denials in Gorrin's declaration are insufficient to rebut Casa's Motion to Commence. IB:42. This argument fails because Casa cannot meet its burden of establishing personal jurisdiction *even if* Gorrin's denials were insufficient. Personal jurisdiction over Gorrin cannot be established for allegedly "committing a tortious act within this state" because, as set forth in Section II, *supra*, Casa failed to connect any alleged tortious conduct to the Properties.

### C. Casa similarly cannot show that the assertion of personal jurisdiction over Gorrin comports with due process concerns.

Casa challenges the District Court's holding that its claims against Gorrin lack sufficient contacts with Florida to satisfy due process minimum contacts requirements (ECF#262:12; ECF#283:19 n.8). IB:42. The District Court determined that Casa could not establish: (1) Gorrin's purposeful availment of the forum state, (2) that Casa's cause of action arises from activities in which Gorrin purposefully availed himself, or (3) that Gorrin could have reasonably anticipated being hailed into court in Florida. ECF#283:19(n.8); ECF#262:12 (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247 (11th Cir. 2000). Despite Casa's attempts to reframe its claim to meet this standard, the holding of the Magistrate Judge and District Court remain correct.

53

Fundamentally, Casa does not assert a personal claim against Gorrin; it seeks to advance an unasserted, potential claim on behalf of Venezuela for actions purportedly taking place in Venezuela. Any valid claim, if it exists, would therefore arise in Venezuela. On appeal, Casa asserts that its claims stem from Gorrin's contacts with Florida. However, any such claim would belong to Venezuela, where the alleged misappropriated funds originated (IB:43) and Casa lacks standing to assert such a claim. *See* Sections I and III, *supra*. Casa further attempts to establish purposeful availment by alleging that Gorrin operated a real estate business in Florida, yet offered insufficient evidence of this and failed to establish any connection between the Properties and the funds generated by the Venezuelan currency exchange activities at issue. *See* Sections II and VI(a), *supra*. Consequently, Casa has not shown that Gorrin maintained sufficient minimum contacts with Florida, nor any link between Gorrin's alleged Florida activities and Casa's constructive trust claim.

## VIII. The District Court Properly Exercised its Discretion in Denying Casa's Motion for Email Service on Gorrin After Affirming the Magistrate's Finding No Personal Jurisdiction.

Casa steadfastly refused to attempt service upon Gorrin in the District Court. Casa now challenges the District Court's decision to deny Casa leave to attempt email service upon Gorrin in Venezuela after affirming the Magistrate's finding of no personal jurisdiction. There is no legal error in the District Court's personal

jurisdiction rulings, and therefore no error in the related conclusion that service via email—with respect to a party over which the District Court could not assert personal jurisdiction—should not be permitted.

## CONCLUSION

The District Court's dismissal of Casa's claim should be upheld because: (1) Casa lacks standing to expropriate a sovereign nation's cause of action; (2) Casa lacks a viable constructive trust claim for failure to link the Properties to the alleged tortious conduct; (3) Casa's claim is barred by the act of state doctrine; (4) the Properties are immune from attachment and execution under the FSIA; and (5) there is no ancillary jurisdiction where Casa seeks to hold the Respondents liable for Venezuela's non-payment of unrelated bonds.

Respectfully submitted,

By: /s/*Lisandra Guerrero*
    Lisandra Guerrero
    Email:
    LGuerrero@RoyBlack.com
    Howard Srebnick
    Florida Bar No. 919063
    Email:
    HSrebnick@RoyBlack.com
    **BLACK SREBNICK**
    201 S. Biscayne Blvd., Suite 1300
    Miami, FL 33131
    Tel.: (305) 371-6421

Robert T. Dunlap
Florida Bar No. 1199509
Email: RDunlap@fnf.law
**FREEDMAN NORMAND FRIEDLAND LLP**
1 SE 3rd Avenue, Suite 1250
Miami, FL 33131
Tel.: (786) 924-2900

Terrance G. Reed
Email: TGReed@lrfirm.net
**LANKFORD & REED, PLLC**
120 N. St. Asaph St.
Alexandria, VA 22314
Tel: (703) 299-5000

*Counsel for Appellees*

55

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 27(d)(2)(A), I hereby certify that the foregoing brief contains **12,998** words, excluding those parts exempted by Fed. R. App. P. 32(f). It further complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6), as it has been prepared in a proportionally-based typeface using Microsoft Word, Times New Roman 14-point font.

*/s/Lisandra Guerrero*
Lisandra Guerrero

56

## CERTIFICATE OF SERVICE

I, Howard Srebnick, certify that on November 4, 2024, a copy of the foregoing was uploaded via the Court's electronic filing system which will provide a Notice of Electronic Filing to counsel of record, and that the required paper copies of the brief will be submitted via mail.

*/s/Lisandra Guerrero*
Lisandra Guerrero